**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TEAMSTERS LOCAL UNION NO. 727** | : | |
| **HEALTH & WELFARE FUND, by and** | : | |
| **through its Board of Trustees, John T. Coli, Jr.** | : | |
| **Zachary Frankenbach, Michael DeGard,** | : | |
| **Nicholas Micaletti, John McCarthy,** | : | |
| **Gregory T. Youmans, Carl S. Tominberg,** | : | **Civil Action** |
| **and Robert Sheehy, 1300 W. Higgins Road,** | : | |
| **Suite 103, Park Ridge, IL 60068,** | : | |
| | : | |
| **TEAMSTERS LOCAL UNION NO. 727** | : | |
| **LEGAL & EDUCATIONAL ASSISTANCE** | : | |
| **FUND, by and through its Board of Trustees,** | : | |
| **John T. Coli, Jr., Zachary Frankenbach,** | : | |
| **Michael DeGard, Nicholas Micaletti, John** | : | **No. _____** |
| **McCarthy, Gregory T. Youmans, Carl S.** | : | |
| **Tominberg, and Robert Sheehy,** | : | |
| **1300 W. Higgins Road, Suite 103** | : | |
| **Park Ridge, IL 60058,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PARKING INDUSTRY** | : | |
| **LABOR-MANAGEMENT COMMITTEE,** | : | |
| **by and through its Board** | : | |
| **of Trustees, John T. Coli, Jr.,** | : | |
| **James Buczek, Michael Prussian,** | : | |
| **and Nicholas Micaletti,** | : | |
| **1300 W. Higgins Rd, Suite 103,** | : | |
| **Park Ridge, IL 60068** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AUTO PARK, LCC** | : | |
| **219 W. 55th Street** | : | |
| **Suite 203** | : | |
| **Claredon Hills, IL 60514** | : | |
| **Defendants.** | : | |

## COMPLAINT

## INTRODUCTION

Plaintiffs, Teamsters Local Union No. 727 Health & Welfare Fund, Teamsters Local Union No. 727 Legal & Educational Assistance Fund, and the Parking Industry Labor Management Committee (hereinafter collectively "the Funds"), by and through the Funds' respective Boards of Trustees, bring this action against Defendant Auto Park, LCC. (hereinafter "Auto Park") pursuant to the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132 and 1145. Plaintiffs seek an order directing Defendant to pay delinquent contributions, interest, and liquidated damages currently owed to the Plaintiff Funds, and that may become due and owing during the pendency of this litigation, plus attorneys' fees and costs, audit costs, and any other amounts permitted by law.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and Sections 502(a)(3), 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2) and 1145.

2.      The Defendant is located in DuPage County, therefore, jurisdiction in the Eastern Division of the U.S. District Court for the Northern District of Illinois is appropriate.

3.      Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b).

## PARTIES

4.      Plaintiff Teamsters Local Union No. 727 Health & Welfare Fund ("Welfare Fund") is a jointly administered multiemployer employee welfare plan within the meaning of

2

Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6), and Sections 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002 and (37)(A). The Welfare Fund's business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

5.     The Welfare Fund is administered by a Board of Trustees ("Welfare Trustees") in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and exists for the exclusive purpose of providing health and welfare benefits to its participants and defraying the reasonable expenses of administering the welfare plan, in accordance with section 404 of ERISA, 29 U.S.C. §1104. The Welfare Fund receives contributions from employers that are parties to collective bargaining agreements with the Teamsters Local Union No. 727 ("Union").

6.     Plaintiffs John T. Coli, Jr., Zachary Frankenbach, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy are Trustees of the Welfare Fund pursuant to the Welfare Fund's Agreement and Declaration of Trust ("Welfare Fund Trust Agreement"). *Exhibit A, Welfare Fund Trust Agreement.* Coli, Jr. Frankenbach, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy are fiduciaries of the Welfare Fund as such term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Coli, Jr., Frankenbach, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy's business address as Trustees of the Welfare Fund is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

7.     Plaintiff Teamsters Local Union No. 727 Legal & Educational Assistance Fund ("L&E Fund") is a jointly-administered, multiemployer employee benefit fund within the meaning of Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6), and Sections 3(1) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002 and (37)(A). The L&E Fund's business address is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

8.     The L&E Fund is administered by a Board of Trustees ("L&E Trustees") and exists for the exclusive purpose of providing legal and educational assistance benefits to its participants and defraying the reasonable expenses of administering the L&E Fund, in accordance with Section 404 of ERISA, 29 U.S.C. §1104. The L&E Fund receives contributions from employers that are parties to collective bargaining agreements with the Union.

9.     Plaintiffs John T. Coli, Jr., Zachery Frankenbach, Michael DeGard, Nicholas Micaletti, John McCarthy, Gregory T. Youmans, Carl S. Tominberg, and Robert Sheehy are Trustees of the L&E Fund pursuant to the L&E Fund's Agreement and Declaration of Trust ("L&E Fund Trust Agreement"), *Exhibit B, L&E Fund Trust Agreement*. Coli, Jr., Frankenbach, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy are fiduciaries of the L&E plan as such term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Coli, Jr., Frankenbach, DeGard, Micaletti, McCarthy, Youmans, Tominberg, and Sheehy's business address as Trustees of the L&E Fund is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

10.     Plaintiff Parking Industry Labor Management Committee ("PILMC") is a labor management cooperation committee within the meaning of Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9).

11.     The PILMC is administered by a Board of Trustees ("PILMC Trustees") and exists for the purpose of improving communication, expanding work opportunities and advancing common interests within the industry. The PILMC receives contributions from employers that are parties to collective bargaining agreements with the Union.

12.     Plaintiffs John T. Coli, Jr., James Buczek, Michael Prussian, and Nicholas Micaletti are Trustees of the PILMC pursuant to the PILMC's Agreement and Declaration of

4

Trust ("PILMC Trust Agreement"), *Exhibit C, PILMC Trust Agreement*. Plaintiffs Coli, Jr., Michaletti, Buczek, and Prussian's business address as Trustees of the PILMC is 1300 W. Higgins Road, Suite 103, Park Ridge, IL 60068.

## DEFENDANT'S CONTRIBUTION OBLIGATIONS

13.     Defendant Auto Park provides valet services at various locations within Chicago, Illinois.

14.     At all times relevant to this action, Auto Park and the Union were parties to a collective bargaining agreement (the "CBA") that required Auto Park to submit contributions to the Funds on behalf of employees performing work covered by the CBA. *Exhibit D, Auto Park CBA.*

15.     Article 19, Section 19.1 of the CBA sets forth Auto Park's obligation to make monthly contributions to the Welfare Fund on behalf of employees performing work covered by the CBA. *Exhibit D, p. 13-14.*

16.     Under the terms of the Welfare Fund's Trust Agreement an employer who does not pay contributions "shall be liable for an additional amount of twenty percent (20%) of the delinquent payments or $50.00, whichever is greater" as well as interest. *Exhibit A, p.20.*

17.     In addition, it is the Welfare Fund's policy and practice to require employers to submit with their monthly contribution payments a remittance report form setting forth the identity of the employees for whom contributions are due and owing and the contribution amount owed for each employee.

18.     The Welfare Fund's Trust Agreement grants the Trustees the "right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees." *Exhibit A, p.20.*

19.     The Welfare Fund's Trust Agreement includes a provision for the collection of delinquent contributions, including delinquencies revealed through an audit, which states as follows:

> The Trustees may compel and enforce the payment of Contributions in any manner which they deem proper but without limitation upon any rights and privileges the Union may have in this connection.

*Exhibit A, p. 19.*

20.     The Welfare Fund's collection procedures provide that if the Trustees file a lawsuit to compel payment of the contributions owed, the employer is liable for not only the delinquent contributions, but also for interest, liquidated damages, attorney's fees and costs, and audit costs incurred as a result of any actions taken to collect the contributions. *Exhibit E, Statement of Collection Procedures, Teamsters Local Union No. 727 Benefit Funds.*

21.     Article 19, Section 19.2 of the CBA sets forth Auto Park's obligation to make monthly contributions to the L&E Fund on behalf of employees performing work covered by the CBA. *Exhibit D, p. 14-15.*

22.     Under the terms of the L&E Fund's Trust Agreement an employer who does not pay contributions "shall be liable for an additional amount of twenty percent (20%) of the delinquent payments or $50.00, whichever is greater" as well as interest. *Exhibit B, p.20.*

23.     In addition, it is the L&E Fund's policy and practice to require employers to submit with their monthly contribution payments a remittance report form setting forth the identity of the employees for whom contributions are due and owing and the contribution amount owed for each employee. *Exhibit B, p. 18-19.*

24. The L&E Fund's Trust Agreement grants the Trustees the "right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees." *Exhibit B, p.20.*

25. The L&E Fund's Trust Agreement includes a provision for the collection of delinquent contributions, including delinquencies revealed through an audit, which states as follows:

> The Trustees may compel and enforce the payment of Contributions in any manner which they deem proper but without limitation upon any rights and privileges the Union may have in this connection.

*Exhibit B, p. 19.*

26. The L&E Fund's collection procedures provide that if the Trustees file a lawsuit to compel payment of contributions owed, the employer is liable for not only the delinquent contributions, but also for interest, liquidated damages, attorney's fees and costs, and audit costs incurred as a result of any actions taken to collect the contributions. *Exhibit E.*

27. Article 20 of the CBA sets forth Auto Park's obligation to make contributions to the PILMC on behalf of employees performing work covered by the CBA. *Exhibit D, p.15.*

28. The PILMC's Trust Agreement grants the Trustees the "right to examine and audit the pertinent books and records (as determined by the Trustees) of each Employer . . . whenever such examination is deemed necessary or advisable by the Trustees." *Exhibit C, p.22.*

29. The PILMC's Trust Agreement contains a provision imposing interest and liquidated damages on delinquent contributions.

> An Employer in default as of the date established by the Collective Bargaining Agreement or the Trustees for payment of Contributions shall be liable for an additional amount of twenty percent (20%) of the delinquent payment or $50.00, whichever is greater, and interest at the rate set forth in the rules and regulations. In the absence of a rate set forth in the rules and regulations, the interest rate used

each month shall be the prime rate plus one percent (1%), as reported in the Wall Street Journal on the first business day of each month.

*Exhibit C, p. 21-22.*

30.     The PILMC's Trust Agreement further includes a provision for the collection of contributions, including delinquent contributions revealed through an audit, which states as follows:

> The Trustees may compel and enforce the payment of Contributions in any manner which they deem proper but without limitation upon any rights and privileges the Union may have in this connection.

*Id. at p. 21.*

## CONTRIBUTIONS OWED THE WELFARE FUND

31.     Consistent with the Welfare Fund Trust Agreement, the Welfare Fund's independent auditors conducted an audit of Auto Park's books and records for the period July 1, 2016 through May 31, 2019 to determine that contributions were paid to the Funds consistent with the contribution provisions of the CBA.

32.     The audit report demonstrates that Auto Park failed to remit contribution payments to the Welfare Fund in the amount of $6,150.90 for work performed by certain employees from:  July through December 2016; January, February, and May through September 2017; and, January, February, and April through September 2018.  *Exhibit F, Audit Report.*

33.     In addition to the contributions owed to the Welfare Fund, pursuant to the Funds' Trust Agreement and Collection Procedures, Auto Park owes the Welfare Fund interest and liquidated damages on the delinquent contributions.  Interest continues to accrue until the contributions are paid in full.  *Exhibit E.*

## CONTRIBUTIONS OWED TO THE L&E FUND

34.     Consistent with the L&E Fund Trust Agreement, the L&E Fund Trustees had an audit conduct of Auto Park's contributions to the L&E Fund for a specified period July 1, 2016 through May 31, 2019 to determine that contributions were paid to the Funds consistent with the contribution provisions of the CBA.

35.     The audit report demonstrates that Auto Park has failed to remit contribution payments to the L&E Fund in the amount of $4,480.00 for work performed by certain employees from: July through December 2016; January and August 2017; January, June, August, and September 2018; and, January and March 2019. *Exhibit F.*

36.     In addition to the contributions owed to the L&E Fund, pursuant to the Funds' Trust Agreement and Collection Procedures, Auto Park owes the L&E Fund interest and liquidated damages on these delinquent contributions. Interest continues to accrue until the contributions are paid in full. *Exhibit E.*

## CONTRIBUTIONS OWED TO THE PILMC

37.     Consistent with the PILMC Trust Agreement, the PILMC Trustees had an audit conducted of Auto Park's contributions to the PILMC for a specified period July 1, 2016 through May 31, 2019 to determine that contributions were paid to the PILMC consistent with the contribution provisions of the CBA.

38.     The audit report demonstrates that Auto Park has failed to remit contribution payments to the PILMC in the amount of $572.00 for work performed by certain employees from: July through September and November 2016; March through December 2017; May through September and November 2018; and, January through March and May 2019. *Exhibit F.*

39.     In addition to the contributions owed to the PILMC, pursuant to the PILMC Trust Agreement, Auto Park owes the PILMC interest and liquidated damages on these delinquent contributions. Interest continues to accrue until the contributions are paid in full. *Exhibit C.*

## ERISA ENFORCEMENT

40.     Section 515 of ERISA, 29 U.S.C. § 1145, states that "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

41.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), further provides that "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan – (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate."

## COUNT I

## Unpaid Contributions – Welfare Fund

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 above as though fully set forth herein.

43.     Pursuant to the CBA between Auto Park and the Union, Auto Park is obligated to pay contributions to the Welfare Fund.

44. As found by a payroll audit, Auto Park owes delinquent contributions to the Welfare Fund in the amount of $6,150.90, plus interest, liquidated damages and audit fees for the months of: July through December 2016; January, February, and May through September 2017; and, January, February, and April through September 2018.

45. The Welfare Fund has demanded Auto Park pay the contributions found by the audit to be owed by Auto Park but Auto Park has failed and/or refused to pay the contributions.

46. The Welfare Fund has been economically harmed by Auto Park's failure and refusal to make contribution payments as required by the CBA and Welfare Fund Trust Agreement.

47. Auto Park's failure and refusal to pay contributions to the Welfare Fund as required by the CBA violated section 515 of ERISA, 29 U.S.C. § 1145.

**WHEREFORE,** the Welfare Fund prays the Court enter the following relief:

(a) That the Court enter judgment in favor of the Welfare Fund and against Auto Park, and that Auto Park be ordered to pay all contributions owed to the Welfare Fund, plus interest, liquidated damages, audit fees and attorneys' fees and costs;

(b) That the Court enter judgment in favor of the Welfare Fund and against Auto Park for any additional contribution amounts that may be found due and owing to the Welfare Fund during the pendency of this litigation, together with interest, liquidated damages, attorneys' fees and costs as mandated by ERISA; and

(c) That the Court order such other relief that the Court deems just and appropriate.

## COUNT II

### Unpaid Contributions – L&E Fund

48.     Plaintiffs incorporate by reference paragraphs 1 through 47 above as though fully set forth herein.

49.     Pursuant to the CBA between Auto Park and the Union, Auto Park is obligated to pay contributions to the L&E Fund.

50.     As found by a payroll audit, Auto Park owes delinquent contributions to the L&E Fund in the amount of $4,480.00, plus interest, liquidated damages and audit fees for the months of: July through December 2016; January and August 2017; January, June, August, and September 2018; and, January and March 2019.

51.     The L&E Fund has demanded Auto Park pay the contributions owed as found by the audit but Auto Park has failed and/or refused to pay the contributions.

52.     The L&E Fund has been economically harmed by Auto Park's failure to make contributions as required by the CBA and the L&E Trust Fund Agreement.

53.     Auto Park's refusal and failure to pay contributions to the L&E Fund, as required by the CBA violates section 515 of ERISA, 29 U.S.C. § 1145.

**WHEREFORE,** the L&E Fund prays the Court enter the following relief:

(a)     That the Court enter judgment in favor of the L&E Fund and against Auto Park, and that Auto Park be ordered to pay all contributions owed to the L&E Fund, plus interest, liquidated damages, audit fees and attorneys' fees and costs;

(b)     That the Court enter judgment in favor of the L&E Fund and against Auto Park for any additional contribution amounts that may be found due and owing to the L&E Fund

during the pendency of this litigation, together with interest, liquidated damages, audit fees, attorney's fees and costs as mandated by ERISA; and

(c)     That the Court order such other relief that the Court deems just and appropriate.

## COUNT III

### Unpaid Contributions – PILMC

54.     Plaintiffs incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

55.     Pursuant to the CBA between Auto Park and the Union, Auto Park is obligated to pay contributions to the PILMC.

56.     As found by a payroll audit, Auto Park owes delinquent contributions to the PILMC in the amount of $572.00, plus interest, liquidated damages and audit fees for the months of: July through September and November 2016; March through December 2017; May through September and November 2018; and, January through March and May 2019.

57.     PILMC has demanded Auto Park pay the contributions owed but Auto Park has failed and/or refused to pay the contributions.

58.     The PILMC has been economically harmed by Auto Park's failure to make contribution payments as required by the CBA and the PILMC Trust Agreement.

59.     Auto Park's failure and refusal to pay contributions to the PILMC is a breach of Auto Park's obligations under the CBA and the PILMC Trust Agreement in violation of section 301(a) of the LMRA, 29 U.S.C. § 185(a).

**WHEREFORE,** the PILMC prays the Court enter the following relief:

(a)     That the Court enter judgment in favor of the PILMC and against Auto Park, and that Auto Park be ordered to pay all contributions owed to the PILMC, plus interest, liquidated damages, audit fees and attorneys' fees and costs;

(b)     That the Court enter judgment in favor of the PILMC and against Auto Park for any additional contribution amounts that may be found due and owing to the PILMC during the pendency of this litigation, together with interest, liquidated damages, audit fees, attorneys' fees and costs as mandated by ERISA; and

(c)     That the Court order such other relief that the Court deems just and appropriate.

Respectfully submitted,

WILLIG, WILLIAMS & DAVIDSON

  s/ JESSICA R. BROWN
JESSICA R BROWN, ESQUIRE
*Lead Counsel*
LINDA M. MARTIN, ESQUIRE
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Office:          (215) 656-3629 (JRB)
Office:          (215) 656-3665 (LMM)
Facsimile     (215) 656-3629
Email           jbrown@wwdlaw.com
                    lmartin@wwdlaw.com

*Counsel to Plaintiffs Teamsters Local Union No.*
*727 Welfare Fund, Teamsters Local Union No. 727,*
*L&E Fund, PILMC, and their Boards of Trustees*

Dated: